IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CHRISTOPHER PERSON, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7:20-cv-00146 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| CLINT D. DAVIS, *et al.*, ) | By:   Hon. Thomas T. Cullen |
| ) | United States District Judge |
| Defendants. ) | |

Plaintiff Christopher Person ("Plaintiff"), a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983, against multiple Virginia Department of Corrections ("VDOC") administrators, officers, and health care workers[1] alleging violations of his Eighth and Fourteenth Amendment rights, and a state-law claim of negligence. (*See generally* Compl. [ECF No. 1] & Am. Compl. [ECF No. 25].)[2] Plaintiff claims the named Defendants failed to administer him a flu shot in a timely manner, thereby causing him to contract pleurisy and an orthomyxovirus. Plaintiff also claims Defendants failed to employ adequate policies and procedures for the administration of flu shots to inmates thereby violating his constitutional due process rights. This matter is before the court on Defendants Davis, Parr, Harrison, Smith,

---

[1] Plaintiff names Keen Mountain Warden Davis, VDOC Regional Ombudsman Parr, Keen Mountain Interim Grievance Coordinator Harrison, Keen Mountain health care staff member Smith, Keen Mountain Chief of Housing & Programs Whitt, Keen Mountain Unit Manager Fields, VDOC Director of Health Services Herrick, VDOC Nurse Epidemiologist Brennan, VDOC Deputy Director of Administration Walters, VDOC Chief Physician Amonette, and VDOC Regional Healthcare Administrator Carter, among others, as defendants.

[2] Plaintiff's Amended Complaint omits some facts that were included in his original Complaint and cross-references exhibits that were filed with the original Complaint but not his Amended Complaint. In the interests of justice, although Plaintiff's Amended Complaint is the operative one, the court will review the factual allegations contained in both pleadings.

Whitt, Fields, Herrick, Brennan, and Walters's (collectively "Defendants") motion for summary judgment. (ECF No. 37). After reviewing the record, the court concludes that Plaintiff failed to exhaust his available administrative remedies on his claims. Accordingly, the court will grant Defendants' motion for summary judgment.

## I.

At all relevant times, Plaintiff was housed as an inmate at the VDOC's Keen Mountain Correctional Center ("Keen Mountain"). By direction of the Virginia Department of Health and Human Services, Keen Mountain provides annual flu shots to inmates who request them. Plaintiff alleges that, once he became aware of the flu shot's availability at Keen Mountain in November 2019, he notified Defendants in writing of his request to receive the shot. (Compl. ¶ 17–18.) Plaintiff asserts he is a "chronic care patient" due to his underlying health conditions and, as such, was entitled to priority administration of the shot. (Compl. ¶¶ 14–15). On December 26, 2019, having not yet received a flu shot, Plaintiff alleges he submitted an Informal Complaint under VDOC Offender Grievance Procedures complaining that he had not been seen by Keen Mountain health care staff to get the shot. (*See* Compl. Ex. B [ECF No. 1-1].) On December 30, 2019, Plaintiff claims Defendant Smith responded to Plaintiff in writing, explaining that the staff was "currently scheduling flu shots." (Compl. ¶¶ 21, 27; Am. Compl. ¶ 16.)

On January 6, 2020, Plaintiff claims he still had not been given a flu shot and began to feel ill, so he submitted an Emergency Grievance complaining that he felt sick, had been denied needed medical treatment, and requesting a flu shot. Plaintiff claims he received a response on January 7, 2020, determining that his grievance did not qualify as an emergency

under VDOC policy and notifying Plaintiff that "Your flu shot will be given on scheduled date." (Compl. ¶ 29; Am. Compl. ¶ 16.)

Plaintiff alleges that he submitted a Regular Grievance under VDOC procedures on January 10, 2020, again requesting a flu shot and complaining that Defendants had administered the shot to other inmates in his unit on January 9. (Compl. Ex. D [ECF No. 1-1].) Plaintiff claims Defendant Harrison, the Interim Grievance Coordinator, did not accept the Regular Grievance at intake for failing to comply with VDOC requirements. Defendant Harrison allegedly marked the Regular Grievance as a "Request for Services," noted that Plaintiff had "Requested Flu Shot," and returned the rejected form to Plaintiff. (Compl. ¶ 37, Ex. D; Am. Compl. ¶ 16.) According to Plaintiff, under VDOC policy, he had five (5) calendar days to appeal Harrison's intake decision to the Regional Ombudsman, Defendant Parr, for review. Plaintiff claims he did so and that, on January 16, 2020, Defendant Parr upheld the intake decision, noting that "KMCC is currently scheduling flu shots." (Compl. ¶ 40; Am. Compl. ¶ 16.)

At this point, Plaintiff claims he contracted the flu and accordingly submitted a request for medical services with the Keen Mountain healthcare staff. (Compl. ¶ 41–42.) Plaintiff alleges he was seen in the Keen Mountain triage unit and given medication but was not referred to a physician or given the flu shot. (*Id.* ¶ 43–44.) As a result of being denied further treatment, Plaintiff claims he developed pleurisy.[3] (*Id.* ¶ 45.) Plaintiff was eventually administered a flu shot on February 24, 2020. (*Id.* ¶ 48.)

---

[3] "The pleura are two adjacent membranes—one lines the cavity in which the lungs sit (parietal pleura) and one covers the lungs themselves (visceral pleura). The space between the two pleura contains a lubricating pleural fluid. Pleurisy is an inflammation of the pleura, often, but not always, characterized by excess pleural fluid called

On March 6, 2020, Plaintiff filed this civil action seeking injunctive relief enjoining Defendants from enforcing VDOC grievance procedures, $100,000 in compensatory damages, and $70,000 in punitive damages. Defendants filed their motion for summary judgment on February 5, 2021. The court has reviewed the pleadings, relevant evidence, and applicable law, making this matter ripe for decision.

## II.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). However, if the evidence of a genuine issue of material fact "is merely colorable or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (internal citations omitted).

In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). The non-

---

'pleural effusion.' There are many types of pleurisy—most are differentiated by the material found in the pleural space." 9 Christine Stewart & Betty Brutman, Attorneys Medical Advisor § 91:36 (Sept. 2021 Update).

moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874-75 (4th Cir. 1992). Rather, the evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315-16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment).

### III.

Defendants argue that summary judgment is proper here because Plaintiff failed to exhaust his available administrative remedies before filing this action, as required by 42 U.S.C. § 1997e(a). For the following reasons, the court agrees and will grant Defendants' motion.

### A.

The Prison Litigation Reform Act ("PLRA") provides, among other things, that a prisoner cannot bring a civil action concerning prison conditions until he has first exhausted available administrative remedies. *Nussle v. Porter*, 534 U.S. 516, 524 (2002) (interpreting 42 U.S.C. §1997e(a)). Exhaustion is mandatory under § 1997e(a), and courts have no discretion to waive the requirement. *See Woodford v. Ngo*, 548 U.S. 81, 85 (2006) (citing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). Thus, a court may not excuse a failure to exhaust available remedies, even to take into account "special circumstances." *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016). The exhaustion requirement of § 1997e(a) applies to *all* inmate suits even where the form of

relief sought, such as monetary damages, cannot be granted by the administrative process. *Woodford*, 548 U.S. at 85. An inmate must follow all steps of the established administrative procedure that the state provides to prisoners and meet all deadlines of that procedure before filing a § 1983 action. *See id.* at 90–94 (2006). The Supreme Court has instructed that the PLRA "requires proper exhaustion." *Id.* at 93. An inmate's failure to follow the required procedures of the prison's administrative remedy process, including time limits, or to exhaust all levels of administrative review is not "proper exhaustion" and will bar the claim. *Id.* at 90.

For proper exhaustion an inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). An administrative remedy is not available "if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). Thus, the court is "obligated to ensure that any defects in administrative exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006). If, however, "an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion." *Ross*, 136 S. Ct. at 1859. And an administrative remedy is not "unavailable" because an inmate fails to comply with procedural rules. *See Woodford*, 548 U.S. at 95. "The benefits of proper exhaustion are only realized if the prison grievance system is given a fair opportunity to consider the grievance which will not occur unless the grievant complies with the system's critical procedural rules." *Miles v. Taylor*, 2016 WL 8261717, at *1 (E.D. Va. July 5, 2016), *aff'd*, 670 Fed. App'x 79 (4th Cir. 2016) (citing *Woodford*, 548 U.S. at 95) (internal quotations omitted). Ultimately, "the exhaustion of administrative remedies under the PLRA is a question of law

to be determined by the court." *Woodhouse v. Duncan*, 2018 WL 1514379 at *6 (W.D. Va. Jan. 10, 2018), *aff'd*, 741 Fed. App'x 177 (4th Cir. 2018).

**B.**

In support of their motion for summary judgment, Defendants provide the affidavit of the Institutional Grievance Coordinator at Keen Mountain, Kellie Breeding, which is accompanied by the VDOC Offender Grievance Procedure, Operating Procedure ("OP") 866.1, and Plaintiff's grievance records related to his claim against Defendants. (ECF No. 38-1). OP 866.1 details the grievance process by which offenders must resolve complaints, appeal administrative decisions, and challenge the substance of procedures. The grievance process provides correctional staff a means to evaluate potential problem areas and, if necessary, correct those problems in a timely manner.

Prior to submitting a regular grievance, an inmate must demonstrate that he has made a good-faith effort to informally resolve his complaint. According to OP 866.1, this good-faith effort generally must be documented using an informal complaint. Once an inmate files an informal complaint, it is logged in VACORIS, the VDOC's computer-based offender information management system, and a receipt is issued to the inmate. Within 15 days, staff should respond to the informal complaint. If an inmate is not satisfied with the response to the informal complaint, he may file a regular grievance. In the event that prison staff does not respond to the inmate within 15 days of the informal complaint being logged, the inmate may proceed to filing a regular grievance and must attach the receipt of the informal complaint to the regular grievance as documentation of his attempt to resolve the issue informally. The filing of an informal complaint alone does not satisfy the exhaustion requirement.

A regular grievance generally must be filed within 30 days from the date of the incident. Regular grievances are date-stamped on the working day they are received. If the grievance meets the criteria for acceptance, it is logged in VACORIS and receipt is issued to the inmate within two working days. If the grievance does not meet the criteria for acceptance, the grievance is returned to the inmate within two working days with an explanation for why the grievance was rejected at intake. Intake rejections can be appealed to the Regional Ombudsman. The Regional Ombudsman's review of the intake decision is the final level of review. A regular grievance's rejection at intake, even if appealed, does not constitute exhaustion. *Jackson v. Barksdale*, 2017 WL 3446259 at *5 (W.D. Va. Aug. 10, 2017) (Sargent, M.J.) ("[S]uch final intake decisions do not constituted exhaustion of administrative remedies."), *aff'd*, 707 Fed. App'x 786 (4th Cir. 2018); *Hailey v. Clary*, 2018 WL 2123623 at *2 (W.D. Va. May 8, 2018) (Urbanski, C.J.). In order to satisfy the exhaustion requirement, an inmate must correct and resubmit the grievance, have it accepted, and then appeal it to the highest available level of review without satisfactory resolution of the issue. *Jackson*, 2017 WL 3446259 at *5.

If a grievance is accepted at intake, it may proceed through up to three levels of review. Grievances must be appealed through all available levels of review to satisfy the requirement of exhaustion before filing a § 1983 lawsuit. Level I reviews are conducted by the Warden or Superintendent of the prison. If the inmate is dissatisfied with the determination, he may appeal the determination to Level II. Level II responses are provided by the Regional Administrator, Health Services Director, Chief of Operations for Offender Management Services, or Superintendent for Education. For most issues, Level II is the final level of review.

Additionally, an inmate may file an emergency grievance if he believes that there is a situation or condition which may subject him to immediate risk of serious personal injury or irreparable harm. An emergency grievance should be responded to within eight hours. If the VDOC staff person responding to the emergency grievance determines that the issue does not subject the inmate to immediate risk of serious personal injury or irreparable harm, this is indicated on the emergency grievance form which is signed with the date and time. If the staff person does determine that such risk is present, he or she will either address the issue or forward it to a higher authority for resolution. Filing an emergency grievance alone does not satisfy the exhaustion requirement.

## C.

Plaintiff failed to exhaust his available administrative remedies in this case, and this is fatal to his current claims. On December 30, 2019, while incarcerated at Keen Mountain, Plaintiff filed an Informal Complaint asserting that he had not received a flu shot despite requesting one. Defendant Smith responded on the same day informing Plaintiff that Keen Mountain was in the process of scheduling flu shots.

Plaintiff then proceeded to submit an Emergency Grievance on January 6, 2020, complaining that he was ill and again requesting a flu shot. Defendant Smith received and responded to the emergency grievance within eight hours. Smith determined that Plaintiff's situation did not qualify as an emergency under OP 866.1 and notified Plaintiff that he would receive his flu shot on his scheduled date.

Plaintiff then filed a Regular Grievance on January 10, 2020, complaining that he had been denied medical treatment and again requesting a flu shot. Defendant Harrison, the

Interim Grievance Coordinator, received this grievance the same day and determined that it did not meet the criteria for acceptance at intake because it was a request for services. Defendant Harris marked Plaintiff's grievance as a request for services along with a note that Plaintiff was requesting a flu shot and returned the rejected form to Plaintiff. Within five days, as required, Plaintiff appealed the intake decision to the Regional Ombudsman, Defendant Parr. After review, on January 16, 2020, Defendant Parr upheld Defendant Harrison's intake decision. Parr returned the grievance form to Plaintiff within two days along with a note that Keen Mountain was in the process of scheduling flu shots. Defendant Parr's decision was final and unappealable *regarding intake*. Although the decision was not appealable, at this point Plaintiff had not exhausted the administrative remedies available to him. *See Jackson*, 2017 WL 3446259 at *5; *Hailey*, 2018 WL 2123623 at *2.

Following Parr's decision, under OP 866.1, Plaintiff could have corrected the errors in his rejected grievance by submitting a new regular grievance form, having it accepted at intake, and, if necessary, appealing it to the highest available level of review. Plaintiff failed to do so; instead, he commenced this action in federal court. That was premature, and it bars his present action. *See Jackson*, 2017 WL 3446259 at *5; *Hailey*, 2018 WL 2123623 at *2.

A prisoner cannot bring a civil action unless he has first exhausted available administrative remedies. *Nussle*, 534 U.S. at 524. Here, Plaintiff failed to exhaust his administrative remedies prior to filing this suit, and he does not allege any facts to dispute or overcome this.[4] The "mandatory language [of the PLRA] means a court may not excuse a

---

[4] To be sure, the court can imagine a situation where grievances are improperly rejected at intake as a means to thwart an inmate's ability to exhaust administrative remedies, and thereby deny inmates access to the courts to make their claims. In such a case, a court would likely find that administrative remedies were not available to

- 10 -

failure to exhaust . . . irrespective of any 'special circumstances.'" *Ross,* 136 S. Ct. at 1856 (citing *Miller v. French*, 530 U.S. 327, 337 (2000)). Finding no genuine dispute of material fact, the court concludes that Defendants are entitled to summary judgment because Plaintiff failed to exhaust available administrative remedies as to the claims against Defendants.

## IV.

For the reasons discussed, the court will grant the Defendants' motion for summary judgment.

The clerk is directed to send a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 27th day of September, 2021.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

---

the inmate because the "prisoner, through no fault of his own, was prevented from availing himself of" the available remedies. *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008). There is no allegation that occurred here and, on review of the grievances and the stated bases for rejection, the court has no cause to suspect that occurred here.