IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CHRISTOPHER PERSON, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>E. WHITED, *et al.*, )<br>)<br>Defendants. ) | Case No. 7:20-cv-00146<br><br>**MEMORANDUM OPINION**<br><br>By:   Hon. Thomas T. Cullen<br>        United States District Judge |

Plaintiff Christopher Person ("Plaintiff"), a Virginia inmate proceeding *pro se*, filed this civil action under 42 U.S.C. § 1983, against multiple Virginia Department of Corrections ("VDOC") administrators, officers, and healthcare workers at Keen Mountain Correctional Center ("KMCC") alleging violations of his Eighth and Fourteenth Amendment rights, along with a state-law claim of negligence. (*See generally* Compl. [ECF No. 1]; Am. Compl. [ECF No. 25].)[1] Plaintiff claims that he was denied a timely flu shot and that, as a result, he contracted the flu and developed pleurisy. This matter is before the court on a motion for summary judgment filed by Defendants E. Whited, R.N., Dr. Kevin Fox, and Deborah Ball, N.P. ("the medical defendants").[2] (ECF No. 57.) For the reasons discussed below, all of the medical defendants are entitled to summary judgment, and their motion will be granted.

---

[1] Plaintiff's Amended Complaint omits some facts that were included in his original Complaint and cross-references exhibits that were filed with the original Complaint, but not his Amended Complaint. Although Plaintiff's Amended Complaint is the operative one, the court will review the factual allegations contained in both pleadings.

[2] A motion to dismiss, filed by defendants Dr. Amonette and Laurie Carter (ECF No. 62), will be addressed in a separate opinion.

## I.

Plaintiff's allegations are relatively straight-forward. At all relevant times, Plaintiff was an inmate at KMCC. He contends that, as a "chronic care" patient in VDOC's custody, he was entitled to "priority" administration of flu shots in late 2019/early 2020. (Compl. ¶¶ 14–16, 18; Am. Compl. ¶¶ 14, 16.) Although Plaintiff requested a flu vaccine, he was not administered one on January 9, 2020, when he contends other chronic care patients were given their vaccines. (Am. Compl. ¶ 16.) Despite his repeated requests, Plaintiff was not administered a flu shot until February 24, 2020. (Compl. ¶ 48.) As a result of the delayed receipt of the flu vaccine, Plaintiff contends he developed the flu, which caused him to develop pleurisy.[3] (*See generally* Mem. Op. pgs. 2–3, Sept. 27, 2021 [ECF No. 68].)

The medical defendants filed a motion for summary judgment, arguing that Plaintiff has failed to establish any personal involvement in his care by defendants Whited and Fox; that they were not deliberately indifferent to Plaintiff's medical needs as a matter of law; or alternatively, that the medical defendants are entitled to qualified immunity because their failure to administer a flu vaccine when requested did not violate a clearly established constitutional right. (ECF No. 57.) Plaintiff responded, and the matter is ripe for disposition.

---

[3] Plaintiff refers to the flu, or influenza, as an "orthomyxovirus." (*See, e.g.*, Am. Compl. ¶¶ 15–18.) "The orthomyxoviruses (influenza viruses) constitute the genus *Orthomyxovirus*, which consists of three types: A, B, and C. These viruses cause influenza, an acute respiratory disease with prominent systemic symptoms. Pneumonia may develop as a complication and may be fatal, particularly in elderly persons with underlying chronic disease." Robert B. Couch, *Orthomyxoviruses*, *Medical Microbiology 4th Edition* (Baron S. ed. 1996), *available at* https://www.ncbi.nlm.nih.gov/books/NBK8611/ (last visited March 23, 2022). "Pleurisy . . . is a condition in which the pleura—two large, thin layers of tissue that separate your lungs from your chest wall—becomes inflamed. Also called pleuritis, pleurisy causes sharp chest pain (pleuritic pain) that worsens during breathing." *Pleurisy–Symptoms and Causes*, Mayo Clinic, *available at* https://www.mayoclinic.org/diseases-conditions/pleurisy/symptoms-causes/syc-20351863 (last visited March 23, 2022).

## II.

Federal Rule of Civil Procedure 56(a) provides that a court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "As to materiality, . . . [o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is inappropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001). But if the evidence of a genuine issue of material fact "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted). In considering a motion for summary judgment under Rule 56, a court must view the record as a whole and draw all reasonable inferences in the light most favorable to the nonmoving party. *See id.* at 255; *Shaw v. Stroud*, 13 F.3d 791, 798 (4th Cir. 1994). The non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. *Baber v. Hosp. Corp. of Am.*, 977 F.2d 872, 874–75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." *Anderson*, 477 U.S. at 252; *see also Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993) ("The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial."); *Sakaria v. Trans World Airlines*, 8 F.3d 164, 171 (4th Cir. 1993) (finding that the district court

properly did not consider inadmissible hearsay in an affidavit filed with motion for summary judgment).

### III.

To establish a cognizable Eighth Amendment claim for denial of medical care, a plaintiff must put forth facts sufficient to demonstrate that an official was deliberately indifferent to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Conner v. Donnelly*, 42 F.3d 220, 222 (4th Cir. 1994); *Staples v. Va. Dep't of Corr.*, 904 F. Supp. 487, 492 (E.D. Va. 1995). A prison official is deliberately indifferent only if he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A claim concerning a mere disagreement between an inmate and medical personnel regarding diagnosis or course of treatment does not implicate the Eighth Amendment. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985); *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975); *Harris v. Murray*, 761 F. Supp. 409, 414 (E.D. Va. 1990). In fact, "many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). An "error of judgment" on the part of prison medical staff or "inadvertent failure to provide adequate medical care," while perhaps sufficient to support an action for malpractice, does not constitute a constitutional deprivation redressable under § 1983. *Boyce v. Alizaduh*, 595 F.2d 948, 953 (4th Cir. 1979), *abrogated on other grounds by Neitzke v. Williams*, 490 U.S. 319 (1989).

Mere negligence does not constitute deliberate indifference; rather, a prison official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists *and* must draw that inference. *Johnson v. Quinones*, 145 F.3d 164, 167 (4th

Cir. 1998); *see also Farmer*, 511 U.S. at 837. The prison official's conduct "must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990).

Intentional delay of, or interference with, medical treatment can also amount to deliberate indifference. *See Formica v. Aylor*, 739 F. App'x 745, 755 (4th Cir. 2018). But the Fourth Circuit has held that there is "no Eighth Amendment violation unless the delay results in some substantial harm to the patient, such as a marked exacerbation of the prisoner's medical condition or frequent complaints of severe pain." *Formica*, 739 F. App'x at 755 (internal quotation marks omitted); *see also Sharpe v. S.C. Dep't of Corr.*, 621 F. App'x 732, 734 (4th Cir. 2015) ("A delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain."). An inmate that can show that he "suffer[s] a lifelong handicap or permanent loss" may establish a deliberate indifference claim. *Coppage v. Mann*, 906 F. Supp. 1025, 1037 (E.D. Va. 1995). "[T]he length of delay that is tolerable depends on the seriousness of the condition and the ease of providing treatment." *Formica*, 739 F. App'x at 758 (quoting *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)).

### A.

Under 42 U.S.C. § 1983, an individual may bring a cause of action to vindicate a violation of his constitutional rights. To state a cause of action under § 1983, a plaintiff must allege facts indicating that he has been deprived of rights guaranteed by the Constitution or laws of the United States, and that this deprivation resulted from conduct committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988). Liability under

§ 1983 is "personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (internal citation omitted). Thus, a § 1983 claim requires factual detail about each defendant's personal involvement. *See Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017); *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (explaining that liability will lie under § 1983 only "where it is affirmatively shown that the official charged acted personally in the deprivation of the [plaintiff's] rights").

Plaintiff has failed to allege any personal involvement in his care by either Nurse Whited or Dr. Fox. Because liability under § 1983 is premised on the plaintiff showing that the defendants "acted personally" to deprive him of his rights, Nurse Whited and Dr. Fox's lack of involvement in the decision to give (or not give) Plaintiff a flu shot is fatal to his claims against them. *See Vinnedge*, 550 F.2d at 928.

> Plaintiff alleges that Nurse Whited
>
>> was the Health authority of the KMCC facility . . . . Per [Operating Procedure] 701.1, defendant Whited was responsible for the lawful administration of the KMCC facility medical department. As such, defendant Whited was required to communicate constantly with [Warden] Davis to ensure that provision of health services is integrated into facility operations so that health care can be provided.

(Aff. of Christopher Person ¶ 13, Nov. 23, 2020 [ECF No. 22-1].) Notably absent from Plaintiff's allegations is any claim that Whited was aware of Plaintiff's request for a flu shot or that he had any role in the ultimate decision of when to administer one to him. Because Plaintiff has failed to establish that Whited "had personal knowledge of and involvement in the alleged deprivation of" his rights, Whited is entitled to summary judgment. *See Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985). Moreover, insofar as Plaintiff alleges Whited is liable

solely by virtue of his position as the "Health authority of the KMCC facility" tasked with the "lawful administration of the KMCC facility," his claim fails. "The doctrine of *respondeat superior* has no application under [§ 1983]." *Vinnedge*, 550 F.2d at 928.

The same is true of Dr. Fox, as Plaintiff's allegations against him are even more scant than those against Nurse Whited. Although Dr. Fox regularly treats patients at KMCC during his once-a-month visits there, he avers in his declaration that he never examined or treated Plaintiff, and that he had no involvement whatsoever in the establishment of KMCC's flu vaccination clinic, in placing orders for KMCC's flu vaccine supply, or in scheduling inmates to receive flu vaccinations. (*See* Decl. of Kevin L. Fox, M.D. ¶¶ 14, 19, Aug. 23, 2021 [ECF No. 58-3].) In his response (and prior declaration), Plaintiff does not even mention Dr. Fox by name, and he does not dispute Dr. Fox's factual averments. He does, however, mention the "KMCC physician,"[4] and Plaintiff conclusively alleges that he or she "intentionally denied [him] access to adequate health care and treatment . . . ." (*See* Person Aff. ¶ 16). But Plaintiff does not allege that it was Dr. Fox who denied him treatment. In the absence of any allegation or proof of Dr. Fox's personal involvement in the alleged deprivation of Plaintiff's constitutional rights, Dr. Fox is entitled to summary judgment.

**B.**

The claims against Nurse Practitioner Ball fail on the merits. The court assumes, based on Plaintiff's allegations and for purposes of this opinion, that Nurse Practitioner Ball (1) knew

---

[4] It is unclear whether Plaintiff's reference to the "KMCC physician" refers to Dr. Fox (the Western Regional Medical Directed for VDOC) or Nurse Practitioner Ball (Plaintiff's treating physician). (*See* Person Aff. ¶ 16.) Regardless of who he is referencing, for the reasons discussed, his claims fail.

of Plaintiff's request to receive a flu shot; and (2) did not schedule Plaintiff for a flu shot until February 24, 2020.

As noted above, to establish an Eighth Amendment claim for deliberate indifference to a serious medical need, a plaintiff must show that the defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Plaintiff relies on his status as a "chronic care" patient to establish that Ball knew that not administering a flu shot to him posed an excessive risk to his health. Although defendants dispute that Plaintiff *was*, in fact, a chronic care patient,[5] the court assumes, for the sake of argument, that Plaintiff is.

---

[5] Neither party defines what constitutes a "chronic care" patient. In his declaration, Nurse Whited states that "Chronic care patients are identified based upon certain medical conditions," but he does not disclose what those conditions are. (Decl. of E. Whited. ¶ 14, Aug. 25, 2021 [ECF No. 58-1].) According to VDOC policy, "Chronic Care patients and over 50 patients are given the [flu] vaccine first." (*Id.* ¶ 16.) That policy, in turn, states that:

> Populations at higher risk for complications attributable to severe influenza who should be offered vaccination first (no hierarchy is implied by order of listing):
>
> a. All persons aged ≥ 50 years;
> b. Adults who have chronic pulmonary (including asthma), cardiovascular (excluding isolated hypertension), renal, hepatic, neurologic, hematologic, or metabolic disorders (including diabetes mellitus);
> c. Persons who are immunocompromised due to any cause (including but not limited to immunosuppression caused by medications of HIV infection);
> d. Women who are or will be pregnant during the influenza season;
> e. Residents of nursing homes and other long-term care facilities;
> f. American Indians/Alaska Natives; and
> g. Persons who are extremely obese (body mass ≥40 for adults).

(*Id.* Ex. 1 [ECF No. 58-2].)
  Plaintiff does not identify how or why he qualifies as a "chronic care" patient, and Defendants dispute that he is one. (*See, e.g., id.* ¶ 14.) In support of his position, Plaintiff points to a scant reference in his medical records where his treatment notes indicate that he was seen on January 19, 2020, for "medication renewal for chronic care: → Simvastatin 20mg tablet —Take one tablet orally in the evening x 365 days." (Decl. of Deborah L. Ball, N.P. Ex. 1 pg. 4, Aug. 25, 2020 [ECF No. 58-5].)
  "Simvastatin is used along with a proper diet to help lower 'bad' cholesterol and fats (such as LDL, triglycerides) and raise 'good' cholesterol (HDL) in the blood." . . . Lowering 'bad' cholesterol and triglycerides and raising 'good' cholesterol decreases the risk of heart disease and helps prevent strokes and heart attacks." WebMD, Simvastatin – Uses, Side Effects, and More, *available at* https://www.webmd.com/drugs/2/drug-6105/simvastatin-oral/details (last visited March 23, 2022). At the relevant time, Plaintiff was 38 years old. (Ball Decl. ¶ 14.)

But assuming for the sake of argument that Plaintiff is correct that he was a "chronic care" patient (as that term is understood within VDOC), he has still not established why Ball's failure to prioritize him for an early flu shot constitutes deliberate indifference to a serious medical need. Separate and apart from applying this VDOC label to himself, Plaintiff has not put forth any evidence about his specific medical conditions, how those conditions increased the risk that he could suffer serious complications from the flu, and Ball's knowledge of the same to establish that Ball's failure to administer an early flu shot subjected him to an unconstitutional risk of harm. Plaintiff instead argues that because he was labeled as a "chronic care" patient, he was automatically entitled to an early flu shot under VDOC policy. And because Ball failed to give him one in violation of that policy, Plaintiff argues that he has established an Eighth Amendment violation. But VDOC's policies with regard to "chronic care" patients generally, as well as its decisions to prioritize certain inmates for early access to a limited supply of flu vaccines, do not, by themselves, give rise to constitutional claims for deliberate indifference to a serious medical need. It is the Eighth Amendment, not VDOC policies, that establish the rights Plaintiff purports to vindicate. *See Tillerson v. Booker*, No. 7:17-cv-00261, 2018 WL 4690401, at *5 (W.D. Va. Sept. 28, 2018) (noting that "allegations of actions taken in violation of VDOC housing policies and procedures . . . are insufficient to state a claim of constitutional magnitude.") Therefore, the question is *not* whether VDOC policy mandated that Plaintiff receive a vaccine, it is whether the *Constitution* did.

---

Given the notation in his medical records and his placement on a cholesterol medication at a relatively young age, the court understands the confusion over Plaintiff's status. As discussed more fully in this Opinion, however, whether Plaintiff is or is not a "chronic care" patient is ultimately not dispositive of his claims.

On this point, Plaintiff's claims falter on a lack of evidence. In order to prevail, he must show that prison officials—and Nurse Practitioner Ball specifically—knew of an "excessive risk" to his health if he was not given a flu vaccine, and that they "disregarded" that risk. *See Farmer*, 511 U.S. at 837. Plaintiff has failed to show anything in his medical history that would have made his delayed receipt of a flu vaccine an excessive risk. He has not identified any specific medical condition that created a risk, let alone an excessive one, that was ignored. His status as a "chronic care" patient, without more, is simply not enough. "'Serious medical needs' are those that have been diagnosed by a physician as mandating treatment or that are so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Lowe v. Johnson*, No. 2:17-cv-02345, 2021 WL 5238211, at *5 (S.D. W. Va. July 28, 2021). Plaintiff has not made this particularized showing.

Instead, he relies on his conclusory (and challenged) claims that he caught the flu and developed pleurisy to show that he was at risk of complications if Ball did not administer a flu vaccine to him. Even assuming that he caught the flu and developed pleurisy *because* he was denied a flu vaccine for two months, the *outcome* does not prove the existence of a *known and ignored risk*. *See, e.g., Franklin v. Foulk*, No. 2:14-cv-0057 KJM DAD P, 2015 WL 3893656, at *3 (E.D. Ca. June 24, 2015) (Report and Recommendation) ("[T]he mere fact that plaintiff developed complications after his stapled hemorrhoidopexy does not, in and of itself, mean that [the defendant physician] was deliberately indifferent to his serious medical needs."), *adopted by* 2015 WL 4705509, at *1 (Aug. 6, 2015). And the fact that Plaintiff, like all other inmates, was at risk of contracting the flu does not rise to the level of a serious medical need. *Accord Freeman v. Quinn*, No. 09-cv-1055-JPG, 2010 WL 2402917, at *2 (S.D. Ill. June 15, 2010)

("Merely being at risk of contracting the disease, as was every other inmate at [the prison], likely does not rise to the level of a serious medical need.").

To succeed on an Eighth Amendment deliberate-indifference claim, a plaintiff must show that the medical treatment was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier*, 896 F.2d at 851. Delaying a flu vaccine to an inmate who may be classified as a "chronic care" patient does not rise to that high level. And denying Plaintiff's request for a priority flu shot does not meet this high standard either. Plaintiff's objection to the denial of his request is no more than a disagreement regarding a course of treatment, and that does not implicate the Eighth Amendment. *See Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) ("Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged."). Nurse Practitioner Ball is therefore entitled to summary judgment on Plaintiff's claims against her.

## IV.

For the reasons discussed above, the medical defendants are entitled to summary judgment on Plaintiff's claims of deliberate indifference to a serious medical need.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 25th day of March, 2022.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE